In the Matter of the Estate of MARGARET LEUPP, Deceased.

HANNAH SULLIVAN, Appellant; THE FIFTH AVENUE BANK OF NEW YORK, as Executor, etc., of MARGARET LEUPP, Deceased, Petitioner, Respondent; JOHN LORTON LEE and Others, Respondents.

In the Matter of the Final Judicial Settlement of the Account of Proceedings of THE FIFTH AVENUE BANK OF NEW YORK, as Executor, etc., of MARGARET LEUPP, Deceased.

THE FIFTH AVENUE BANK OF NEW YORK, as Executor, etc., Appellant; JOHN LORTON LEE and Others, Objecting Legatees, Appellants; HANNAH SULLIVAN, Respondent.

(Consolidated Appeal.)

First Department, February 11, 1937.

*Alfred J. Talley* of counsel [*James A. McKaigney* with him on the brief; *Talley & Lamb*, attorneys], for Hannah Sullivan.

*Gerard T. Remsen* of counsel [*Remsen & Remsen*, attorneys], for the petitioner The Fifth Avenue Bank of New York, as executor, etc.

*John E. Mack*, for the legatees John Lorton Lee and others.

TOWNLEY, J. This appeal brings up for review the question whether the appellant, Hannah Sullivan, established by the weight of evidence that the transfers to her of some $44,000 worth of cash and securities by the testatrix constituted valid gifts or whether they were obtained by trick or undue influence exercised by Hannah Sullivan and others over the testatrix. No purpose would be served by a prolonged discussion of the facts set out at length in the opinion of the surrogate.

The age and circumstances of the deceased, her frailty, the fact that she herself did nothing inconsistent with a mere intent to make the securities negotiable, are all facts which made it reasonable to disbelieve the testimony of Mr. and Mrs. Grimes. Without their evidence the claimant cannot prevail. The surrogate

saw and heard Grimes and his wife and was peculiarly able to determine their credibility. His decision is fully supported by the testimony.

The legatees appeal from so much of a decree of the surrogate as gives respondent Hannah Sullivan a priority over the other legatees in respect to the $5,000 codicil. By the first clause in the will, the testatrix, aside from certain articles of personal property, left $8,000 to Hannah Sullivan. The third clause of the will gave $2,500 to a Miss Rapallo. The sixth clause provides that if the estate be insufficient to pay the legacies in full, the legacies given by the first and third paragraphs shall first be paid in full and the other pecuniary legacies shall be paid *pro rata*. The codicil provided as follows: " I give and bequeath to Hannah Sullivan an additional sum of five thousand dollars * * *. This is in addition to what was bequeathed to her in paragraph first of said will. Any inheritance tax on the above bequest to be paid from my estate."

The learned surrogate has held that it was the intention of the testatrix to give to the bequest in the codicil the same preference that she had given to the bequest in the first paragraph of the will. The sixth clause of the will specifically limits the preference to the legacies mentioned in the first and third clauses. The codicil does not incorporate the $5,000 legacy into the first clause. It gives the sum of $5,000 *in addition* to what was bequeathed in paragraph first of the will.

We think that the language in this codicil is insufficient to warrant the inference that the codicil was to be treated as anything except a general legacy and we hold that the bequest in the codicil is not subject to any priority.

The decree in the discovery proceeding should be affirmed, with costs. The decree construing the will and codicil should be reversed, with costs, and only the legacies contained in the first and third paragraphs of the will should be preferred.

MARTIN, P. J., and COHN, J., concur; O'MALLEY and DORE, JJ., dissent.

DORE, J. (dissenting). This is a consolidated appeal to review: (1) A decree of the Surrogate's Court of New York county in discovery proceedings, directing the respondent in such proceedings to deliver to the executor certain personal property; and (2) a decree of the same court adjudging that a legacy of $5,000 given in decedent's codicil is preferred in the same manner as a legacy of $8,000 given to the same beneficiary by the will.

Hannah Sullivan, respondent in the discovery proceeding (hereinafter referred to as " respondent "), appeals from the discovery decree. The executor and one John Lorton Lee and certain other legatees appeal from the construction decree. Constance A. Rapallo, a legatee and a friend of the decedent, and other legatees did not appeal from the latter decree.

Letters testamentary were issued to the executor, The Fifth Avenue Bank of New York, September 28, 1933, and the will and codicil were admitted to probate. Thereafter, in February, 1935, the executor filed its account and requested the surrogate to construe the provisions of the codicil with respect to an additional legacy of $5,000 bequeathed therein to the respondent. In its schedules annexed to the account the executor recognized and accounted for as valid gifts certain transfers made by the decedent to the respondent, aggregating $44,064.24. Objections to the account were thereafter filed in behalf of five legatees, cousins of deceased, on the ground that the executor had not instituted a discovery proceeding to reclaim the property which had been thus accounted for. As a result of the objections, the executor thereafter commenced the discovery proceedings on April 24, 1935.

The will was dated November 17, 1925. The codicil was executed January 27, 1930, when the decedent was ninety years of age. She died July 24, 1933, at ninety-three years of age. No claim is made as to either undue influence or incapacity in connection with the execution of the codicil, but it is contended that the transfers and claimed gifts made after the execution of the codicil and within three years before the death of the decedent were not valid gifts but were obtained by undue influence exercised by the respondent over the testatrix, Margaret Leupp.

The testatrix and her sister Isabella, who died in 1925, were ladies of culture, intelligence and refinement, and had always been fairly well-to-do. Respondent had originally come to the Leupps as a maid twenty years before the death of the testatrix. She had taken excellent care of both ladies and had proved loyal and devoted to them, and they were extremely grateful to her for her long and faithful service. The record establishes the fact and the surrogate in his opinion points out that decedent's relatives saw her rarely and that during the eight years that she lived after her sister's death she maintained a household in which she lived alone with respondent as her servant, nurse and devoted companion. The record also establishes and the surrogate conceded that the deceased regarded respondent affectionately, appreciated her devoted service, and intended to recognize it. Indeed, the relation that existed between respondent and deceased was not as claimed

that of a "paid companion," but on respondent's part was an unbroken record of twenty years of sincere affection, personal devotion and faithful service under increasing physical difficulties and trials; and on the part of the deceased the type of grateful appreciation of such devoted service that a woman of her intelligence would be most likely to entertain.

The executor admits and the proof shows that no question can be raised about the formal correctness of the transfers. Every element of a completed delivery of gifts *inter vivos* is established, including, in my opinion, clear donative intent, with no factual proof of undue influence.

Quite properly, when the transfers were questioned, the burden was placed upon respondent to establish the validity of the gifts; such gifts *inter vivos*, especially when made by those advanced in age, should always be closely scrutinized. Respondent, under the provisions of section 347 of the Civil Practice Act, was barred from testifying as to any conversation or transaction with the deceased. The donor was dead. But the witnesses called by the respondent were unrelated to her and wholly disinterested. Indeed, two of them as legatees named in the will and codicil, actually testified against their own interest in respondent's behalf, since if the gifts were held valid their legacies would abate.

The testimony of all these witnesses, who were not shaken on cross-examination, including prolonged cross-examination by the learned court, was that the deceased, despite her advanced age and physical condition consequent thereon, retained to the very end an alert mind and understanding. This was the testimony of Mrs. Mary Dailey, a resident of Rockport, Mass., for over fifty years, who saw the decedent frequently, from once to three times a week down to 1933, and toward the end saw her more frequently; of Elliott W. Grimes, a lifelong resident and an elected public official of Rockport, Mass., who was present and acted as notary public on February 3, 1932, when the larger transfers by gift were made; of his wife, Mrs. Grimes, who with her husband witnessed this transfer when the requirement of two witnesses necessitated that it be rewitnessed at a later date; of Mrs. Betsy L. Harris of Rockport, a registered nurse who frequently, especially toward the end of decedent's life, saw her and cared for her and was with her a great deal; and of Dr. Charles T. Sibley, a practising physician for upwards of twenty years, who had known the decedent for fourteen years, had attended her professionally, and had visited her in the fall of each year from 1926 until she died. Mrs. Dailey's testimony is of the highest probative value because, as a result thereof, she stands to lose a legacy of $1,000 bequeathed

her under the codicil. Dr. Sibley's testimony is likewise entitled to great weight because of his professional care of the decedent, his professional knowledge and powers of observation, his opportunities to observe her on his visits, and his unqualified repeated affirmation of her mental clearness. The testimony of all these witnesses is definite, detailed, convincing. Nor was there any proof whatever adduced by the petitioner that the decedent was any less mentally alert in 1931 and 1932 than in the preceding year when she had executed her codicil. The record establishes that the decedent retained an alert mind to the very end, that she knew and fully understood not only her own affairs and what was going on around her, but she was well informed, as a cultured and intelligent woman of her type would be, on what was taking place in the world at large, in which she showed an intelligent interest.

It is also significant that neither of the two witnesses called by the petitioner testified that Mrs. Leupp's conversation or conduct on any of the occasions on which they saw her impressed them as irrational. One of these witnesses, Mrs. Lee, is the wife of John Lorton Lee, who under the provisions of the will and codicil is bequeathed the largest individual legacy — $20,000 — and is really the moving party in this proceeding, and while Mrs. Lee is technically not disqualified, she is actually an interested witness. The other witness, Frances G. Curtis, testified that in the years 1931 and 1932, when the decedent was ninety-two years old, she was "incredibly slight and wasted but her spirit never changed." Concededly, there is not the slightest evidence by any witness of any affirmative act of the respondent showing that she ever did anything improperly to influence the deceased, or of any word or act of the deceased indicating that she was not of sound and disposing mind and memory. The only testimony adduced is of a few isolated instances of extreme physical fatigue, which is inseparable from extreme old age.

An analysis of the testimony in detail would enlarge to an unreasonable extent this opinion. Enough to say, that a reading of the entire testimony and the documentary evidence establishes by a preponderance of the credible testimony of wholly disinterested witnesses, many of them persons of exceptional intelligence and all of them of unquestioned probity, that the gifts of personal property made by Margaret Leupp to the respondent were valid gifts *inter vivos*.

Much emphasis is made of the fact that the respondent practically lived alone with the decedent who had no advice from others and

toward the end of her life did not leave her home. But if the respondent did not care for the deceased, there was nobody else to care for her. The cousins who are now objecting were conspicious by their absence.

The Fifth Avenue Bank of New York, an executor of wide experience and recognized probity, acknowledged the validity of these gifts and had thus originally accounted for them, being quite properly satisfied from the documentary evidence that they were valid gifts *inter vivos*. Only when the cousins belatedly arrived two years after the deceased had died was any question raised as to invalidity.

In her will and codicil, which are not challenged, the respondent is the primary object of the deceased's bounty and preferment. The respondent's bequest is the only one out of about twenty specific legacies to be both preferred and tax free and she is also the first person named in the first paragraph of the decedent's will and codicil.

The courts should be vigilant to protect estates against those who claim gifts from decedents without clear and convincing evidence to support the claim, but when such evidence is afforded and all the required formalities of gifts *inter vivos* established by affirmative proof, documentary and otherwise, and no factual proof of undue influence adduced, the courts should not be astute, on behalf of distant relatives who throughout decedent's life evinced very little concern about her, to defeat the decedent's expressed intention to reward the one human being who was faithful and devoted to her to the end. Scrutiny there should be, but the conclusions reached must be based upon something more than suspicion and inference made thereon.

The legacy to respondent contained in the codicil was properly construed as a preferred legacy. The gift to respondent in the will is concededly preferred. While the codicil does not in express terms characterize the $5,000 therein bequeathed as preferred, it does say: " This is in addition to what was bequeathed to her in paragraph first of said will; " that is, in addition to the $8,000 given by paragraph first of the will, which is expressly stated to be preferred. The will and the codicil must be construed as parts of the same instrument. The provisions of the will are not to be disturbed further than is necessary to give effect to the codicil. The codicil, therefore, merely changed the amount of the preferred legacy given in the will. The surrogate properly held that the language thus used operated to attach to the $5,000 gift made in the codicil the same preference as that which was expressly attached to the gift under the will.

From all of the above it follows that the decree in the discovery proceedings should be reversed and the petition of The Fifth Avenue Bank of New York should be dismissed, with costs, and the decree construing the codicil should be affirmed, with costs.

O'MALLEY, J., concurs.

Decree in the discovery proceeding affirmed, with costs. Decree construing the will and codicil reversed, with costs, and only the legacies contained in the first and third paragraphs of the will preferred. Settle orders on notice.